**Connie Lynn MADRAY, et al., Plaintiffs,**

v.

**PUBLIX SUPER MARKETS, INC., Defendant.**

No. 96–14235–CIV.

United States District Court, S.D. Florida.

Oct. 28, 1998.

Christopher Charles Sharp, Ft. Lauderdale, FL, Erika Deutsch Rotbart, Boca Raton, FL, for Plaintiffs.

William Stuart Reese, Coral Gables, FL, for Defendant.

### SUMMARY FINAL JUDGMENT

ROETTGER, District Judge.

■ THIS CAUSE is before the Court upon motions for summary judgment (docket entriesè64 & 69) filed by defendants, Publix Super Markets ("Publix") and Ronald Selph ("Selph"). Plaintiffs, Connie Lynn Madray ("Madray") and Melody Holden ("Holden"), brought this action alleging defendants [1] violated Title VII of the Civil Rights Act of

---

1. To the extent that plaintiffs seek to hold Selph liable under Title VII, summary judgment is granted on behalf of defendant. The relief granted under Title VII is against the employer, not the individual employee whose actions would constitute a violation of the act. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991).

1964, 42 U.S.C. § 2000, et seq. by subjecting plaintiffs to a hostile work environment (Counts I & II); committed battery (Counts III & IV) and invasion of privacy (Counts V & VI) and violated the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes (Counts VII & VIII).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party who moves for summary judgment must demonstrate that there are no genuine disputes as to any material facts with respect to issues for which that party bears the burden of proof at trial. As to issues for which the non-moving party bears the burden, the movant need only establish that, after adequate time for discovery, there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the movant has met these burdens, the court must view the evidence and all permissible factual inferences in a light most favorable to the non-moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant, for its part, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348; *Samples v. City of Atlanta,* 846 F.2d 1328, 1331 (11th Cir.1988). Rather than merely alleging the existence of some factual dispute, the non-moving party must rebut any facts properly presented by way of affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to his case so as to create a genuine issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## STATEMENT OF FACTS

Viewing the evidence in the light most favorable to plaintiffs, the facts are as fol-lows. Selph was employed by Publix as store manager at store number 118 in Okee-chobee, Florida from 1994 until September 1995. Plaintiffs were employed at the store during the same period and Selph was their supervisor. Plaintiff Holden is still employed at store number 118; plaintiff Madray worked at the store until April 1997 when she was transferred at her request to a store in Athens, Georgia.

From the commencement of his employment as store manager, it was Selph's practice to hug and pat employees. During his deposition, Selph stated that the purpose of his behavior was to promote a family atmosphere at the store and increase productivity. Initially, neither plaintiff was offended by Selph's behavior and believed he was just being friendly.

However, with the passage of time, plaintiffs contend Selph's conduct became offensive. Madray stated during her deposition that Selph hugged her on several occasions and that these were inappropriate in light of the tightness of the embrace. She also stated that Selph would rub his body against her back while purportedly reaching for items on a shelf in his office so that his genitals made contact with her back. Selph also made unwanted contact by straightening her necklace, blowing in her ear and, on one occasion, giving her a good morning kiss on the cheek.

Holden describes similar instances of unwanted physical contact. For example, Holden alleges that Selph dipped Holden as if to dance and kissed her on the neck. On another occasion, when she jokingly accused Selph of being a traitor for reporting a problem with a tobacco shipment, he grabbed her around the legs and begged for her forgiveness.

Madray also alleges that Selph made several suggestive comments. When her husband suffered an abdominal injury, Selph said that if her husband "couldn't take care of her, he could ...." When giving Madray an invitation to a company breakfast, he told her "be sure to wear something sexy because I'm going with you ...."

Holden also claims that she was subjected to distasteful comments. In an exchange in-

volving the fattening quality of ice cream, Selph stated to Holden "I'll work it off of you ...." On another occasion, he said that he "got it up for her." Although Selph contends he was referring to a computer difficulty which he repaired, Holden states that Selph made provocative gestures.

Plaintiffs complained concerning Selph's conduct to Second Assistant Manager Darlene Clark, Second Assistant Manager Gary Priest and Bakery Manager David Neff. These individuals were subordinates of Selph. Plaintiffs spoke with Clark at a restaurant during a social event. Ms. Clark allegedly responded that he had hugged her as well and took no action.

Holden stated that Neff witnessed an incident in which Selph touched Holden's hair. Neff told Selph that his conduct was harassment and told Holden, outside of Selph's presence, that if the conduct continued, he would take further action. Holden did not request that Neff take further action and stated that she would discuss the matter with Madray and make arrangements to see District Manager Richard Rhodes.

Holden also complained to Priest while socializing outside of work. He took no action at that time. Several months later, he witnessed Selph rubbing Holden's back. Selph told Priest not to interrupt when he was hugging or touching a beautiful woman.

Shortly thereafter, Priest contacted District Manager Richard Rhodes upon request of plaintiffs. Rhodes met with plaintiffs the next day and began an investigation. According to plaintiffs, during that meeting Rhodes stated that the assistant managers to whom they had complained should have told him. The next day, Selph was given a written warning, demoted and transferred to a store in another city. Madray never worked with Selph again after making the complaint; Holden worked half a day with Selph but had no contact with him.

Publix had adopted a sexual harassment policy which was disseminated to its employees in the form of a handbook. Plaintiffs admit that they were given a copy of the handbook when hired by Publix and that they were aware of the procedures contained therein regarding sexual harassment. Plaintiffs were hired prior to Selph's employment at store number 118. Holden remarked in her deposition that the handbook was "... very explicit." For ease of reference the pertinent portions of the handbook are set forth in footnote form.[2]

2. In a section entitled "Open Door Policy", the handbook sets forth:

It is just a fact of life that occasionally there will be problems and misunderstandings among people. If something bothers you, or if you need clarification of a Publix policy or procedure, please talk to a manager about it. Always remember, **as a Publix associate, you can talk to anyone in management.** Experience has shown, however, that many problems can best be worked out by the following steps: 1. Discuss your problem or raise your question directly with your immediate Supervisor/Manager/Department Head. 2. If the matter is not resolved or you still have a question or concern, go to the next highest level of management (for example, Store Manager, District manager, Regional Director of Retail Operations, or a Vice–President). Just remember—you can discuss your problem with anyone in management all the way to the top level. Also, your Divisional Human Resources Department is available to assist you with any matter at any time, and you may contact the Employee Assistance Department in Lakeland for **confidential** counseling. In the section entitled "Statement Concerning Prohibited Harassment, Including Sexual Harassment", Publix sets forth that sexual harassment is prohibited, defines sexual harassment and explains the complaint procedure to be followed. This procedure is as follows:

If any of us believe that he or she is being subjected to any of these forms of harassment, or believe he or she is being discriminated against because other associates are receiving favored treatment in exchange for, (example—sexual favors)[sic], he or she must bring this to the attention of appropriate persons in Company Management. The very nature of harassment makes it virtually impossible to detect unless the person being harassed registers his or her discontent with the appropriate Company representative. Consequently, in order for the Company to deal with the problem, **we must report such offensive conduct or situations to the Store Manager, District Manager or Divisional Personnel Managers ....** A record of the complaint and the findings will become a part of the complaint investigation record and the file will be maintained separately from the associate's personal file. Any person electing to utilize this complaint resolution procedure will be treated courteously. The complaint will be handled as swiftly and as confidentially as practical in light of the need to remedy the problem, and registering the complaint will in no way be used against

Plaintiffs did not follow procedures in the handbook because they feared repercussions for making a complaint. However, plaintiffs admit that their pay and hours of work were not affected. They were not demoted or transferred, nor were their benefits affected or reduced after they complained of harassment.

## CONCLUSIONS OF LAW

■ An employer is subject to vicarious liability to an employee for an actionable hostile environment created by a supervisor with authority over the employee. *Burlington Industries v. Ellerth*, 524 U.S. 742, ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). The parties agree that Selph occupied a position of supervisory authority over plaintiffs. Therefore, if his actions resulted in a hostile work environment, Publix would be vicariously liable to plaintiffs for those actions subject to any affirmative defenses. As Publix presents such a defense, the court will assume without deciding the existence of a hostile work environment.[3]

■ When the harassment results in no tangible employment action, an employer will not be liable if: (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington*, 118 S.Ct. at 2270. The promulgation of a workable anti-harassment policy satisfies the first element's reasonable care standard. *Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998). An employee's failure to use the complaint procedure administered by an employer satisfies the second element. *Burlington*, 118 S.Ct.

at 2269. An employee's generalized fear of repercussions cannot form the basis for an employee's failure to complain to his or her employer. *Fierro v. Saks Fifth Avenue*, 1998 WL 388971 (S.D.N.Y.1998).

It is undisputed that Publix has a policy against sexual harassment of which plaintiffs were admittedly aware that sets forth a specific complaint procedure with the appropriate persons in management to be contacted. Employees are provided with the option to contact the Store Manager, District Manager or Divisional Personnel Managers. In providing several avenues, an employee can avoid having to file a complaint with the alleged perpetrator. The policy advises employees that by the very nature of harassment, it might be impossible to detect unless complaints are registered with the appropriate person. Also, employees are assured that the process will be as confidential as possible and that complaints would in no way be used against them.

It is also undisputed that plaintiffs did not follow the procedures set forth in the sexual harassment policy for some time based on a fear of negative consequences. However, when the first appropriate person (District Manager Rhodes), as identified in the sexual harassment policy, was contacted, an investigation was immediately instituted and plaintiffs suffered no further harassment.

Plaintiffs contend that the affirmative defense should not be available to Publix. They contend that the policy manual itself is confusing and that they believed they had followed the appropriate procedures by advising people in management, Clark, Neff and Priest.

the associate nor will it have adverse impact on the individual's employment status.

3. For a hostile environment to be actionable, it must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 19–22, 114 S.Ct. 367, 370–371, 126 L.Ed.2d 295, ——–—— (1993). In determining whether a hostile environment exists, the court must consider all circumstances including the frequency of the conduct; its severity, whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* 114 S.Ct. at 371. However, the prohibition of harassment on the basis of sex requires neither a sexuality nor androgyny in the workplace. *Oncale v. Sundowner Offshore Services Incorporated*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). The court notes that the alleged behavior falls short of other conduct that courts have held did not constitute a hostile environment. *See Koelsch v. Beltone Electronics*, 46 F.3d 705 (7th Cir.1995) and *Gearhart v. Eye Care Centers of America*, 888 F.Supp. 814 (S.D.Tex.1995).

██ First, it should be noted that plaintiffs admitted during their deposition that they knew District Manager Rhodes was the individual to be contacted. Second, the manual itself is unambiguous. Plaintiffs rely on the fact that in the section entitled "open door policy", the handbook sets forth that problems may be discussed with an employee's immediate supervisor, manager, department head or anyone in management. In complaining to Clark, Neff and Priest, plaintiffs contend they had placed Publix on notice of the problem. However, the very section upon which they rely sets forth that if a problem is not resolved, the employee should go to the next highest level of management, to the top level if necessary. Further, the handbook contains a section which specifically deals with sexual harassment and the procedures to be followed. Plaintiff Holden admitted that this section was very explicit.

Armed with the knowledge contained in the policy manual, which they chose not to follow, plaintiffs unreasonably failed to take advantage of preventative or corrective opportunities provided by Publix. To permit an employee to disregard a policy of which she was admittedly aware based on generalized fears would require an employer to be automatically liable for harassment committed by a supervisor. This is a result which the Supreme Court expressly sought to avoid. *See Faragher,* 118 S.Ct. at 2291–2293.

Therefore, upon consideration of the motions and the record herein, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' motions for summary judgment with respect to plaintiffs allegations that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. by subjecting plaintiffs to a hostile work environment (Counts I & II) are hereby **GRANTED.** Plaintiffs' federal claims are **DISMISSED with prejudice.**

2. The court, pursuant to 28 U.S.C. 1367(c)(3), hereby declines to exercise supplemental jurisdiction over plaintiffs' state law claims for battery (Counts III & IV), invasion of privacy (Counts V & VI) and violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes (Counts VII & VIII). 28 U.S.C. 1367(d) provides that the statute of limitations is tolled while state

law claims are pending in federal court until thirty days after an order of dismissal. Therefore, plaintiffs may pursue these claims in state court if they so choose, as long as they file in a timely manner. Plaintiffs' state law claims are hereby **DISMISSED without prejudice.**

3. All pending motions are denied as moot. The Clerk of Court is directed to close this case.