Lynne H. BARRETT, Plaintiff,

v.

The APPLIED RADIANT ENERGY CORPORATION, Defendant.

No. Civ.A.6:98CV00069.

United States District Court, W.D. Virginia, Lynchburg Division.

Nov. 4, 1999.

Gary M. Coates, (Fralin, Feinman, Coates & Kinnier, P.C.), Lynchburg, VA, for plaintiff Barrett.

Bayard Easter Harris, Diane Marie Baun, Daniel C. Summerlin, (Woods, Rogers & Hazlegrove, P.L.C.), Roanoke, VA, for defendant ARECO.

## OPINION

MOON, District Judge.

Plaintiff Lynne H. Barrett ("Barrett") was awarded a $5,000 verdict against Defendant Applied Radiant Energy Corporation ("ARECO") after the a jury found that she had not unreasonably failed to report sexual harassment by her supervisor. This opinion addresses two separate post-trial motions. ARECO has filed a motion to dismiss claiming that this Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to hear Barrett's sexual harassment claim. ARECO has also filed a renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Because Barrett has met all of the jurisdictional requirements of Title VII, this Court finds that it does have subject matter jurisdiction. Thus, ARECO's motion to dismiss is DENIED. However, the Court

also finds that it should not have submitted the case to the jury because Barrett as a matter of law unreasonably failed to report the harassment to her employer. Therefore, ARECO's renewed motion for judgment as a matter of law is GRANTED.

## I. BACKGROUND

ARECO is a Virginia corporation which manufactures acrylic and wood flooring. Barrett has been employed by ARECO since January, 1997. ARECO concedes that during her employment, Barrett was subjected to sexually harassing behavior by Richard Ramsey, her supervisor and ARECO's former vice president and sales and marketing manager.

Barrett went to work for ARECO in March of 1997, replacing her husband in a job he was leaving to begin work elsewhere. Events began to unfold during a June, 1997 sales trip to Atlantic City, New Jersey. Toward the beginning of the trip, Barrett responded to Ramsey's knocking at her hotel room door by opening the door dressed only in a towel. Ramsey told Barrett that she was "either really comfortable around me or that's one hell of a come-on." Barrett then dressed without incident and they went to dinner that night, whereupon Ramsey told Barrett sexually-provocative stories and attempted to engage in a sexually-explicit conversation. After dinner, Barrett called her husband and told him about Ramsey's behavior. Barrett's husband had left the company on good terms, recommended his wife for her position, and continued to visit the company from time to time. However, Barrett dissuaded her husband from his suggestion that he report Ramsey's conduct to ARECO Chief Executive Officer Lawrence Barrett (no relation). Barrett also called her ex-boyfriend that night to tell him about Ramsey's behavior. Throughout the remainder of the multi-day trip, Ramsey harassed Barrett by propositioning her, grabbing her, kissing her on the mouth, and speaking to her in a vulgar, threatening, and offensive manner.

While driving to the airport on the return trip from Atlantic City, Barrett told Ramsey that he was an attractive man and that she "could maybe fall in love" with him, that if she was not married "maybe this would be okay," that she was "not going to do this," but if she were "to do this," she would have an affair with her ex-boyfriend instead. During that drive, Ramsey had his hand on Barrett's leg, whereupon she removed it but began to rub and suck his fingers. She said she did this to keep him from touching her leg and because she was afraid of him. When they arrived at the airport, Barrett thanked Ramsey for being so nice to her, hugged him, and kissed him on the cheek. She explained her actions as being related to sexual abuse by her grandfather. In the months following the Atlantic City trip, Ramsey propositioned Barrett, described explicit sex acts, asked her about her sex life, described his sexual relations with his wife in explicit language, showed her pornographic pictures on his computer screen, gave her vulgar and sexually offensive written materials, and touched her without her permission. Barrett testified that she tolerated all of Ramsey's actions because of her fear of him or of losing her job.

Barrett did tell of Ramsey's actions to a number of non-managerial employees including Timothy Barrett (no relation), an ARECO employee who also worked under Ramsey and who was the son of Lawrence Barrett. Barrett also spoke with a counselor and a police officer who was a friend of hers. Barrett did not, however, report Ramsey's conduct to any of ARECO's managers pursuant to the company's sexual harassment policy. That policy states that employees who feel that they are being harassed should report the conduct to:

> any member of the management team with whom you feel comfortable discussing the situation including the President. You may be assured that your complaint

will be dealt with immediately and will be kept as confidential as possible. You will not be penalized in any way for reporting a harassment problem.

\*　　\*　　\*　　\*　　\*　　\*

We cannot help resolve a harassment problem unless we know about it. Therefore, it is your responsibility to bring those kinds of problems to our attention so that we can take whatever steps are necessary to correct the problem.

ARECO Employee Handbook, 3–4, 3–5. Barrett knew of the policy, had signed an acknowledgment that she received a copy of it, and had consulted it after Ramsey had started to harass her. Moreover, Barrett had consulted with a lawyer as early as the third week of August, 1997.[1] However, instead of reporting Ramsey's conduct to ARECO's management Barrett proceeded to collect evidence of his harassment, including recording conversations with him by wiring herself with a hidden tape recorder. Ramsey's harassing behavior toward Barrett continued until the company independently discovered his conduct and swiftly terminated him in November, 1997.[2] Barrett claims that as a direct and proximate result of Ramsey's actions, she has suffered great emotional pain and loss of appetite and sleep.

On October 2, 1997, Barrett filed a complaint with the EEOC via her attorney[3] on his law firm's stationary. In her complaint, Barrett referred neither to federal nor state law. Instead, she simply stated that her charge of discrimination was based on sexual harassment committed be-

tween June 1997 and the date of the letter. With the letter Barrett enclosed a sworn affidavit detailing Ramsey's harassment of her. Barrett subsequently received a right to sue letter from the EEOC for violations of Title VII, whereupon she filed this action on September 23, 1998. She originally asserted six different counts against both ARECO and Ramsey, including violations of Title VII, retaliation, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention.

Defendant ARECO filed a motion to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim of retaliation, negligent infliction of emotional distress, and negligent retention. This Court denied ARECO's motion to dismiss. However, both parties conceded that in light of a recent decision by the Fourth Circuit, *Lissau v. Southern Food Service, Inc.,* 159 F.3d 177 (4th Cir.1998), Ramsey should no longer be a party to the Title VII action. Therefore, this Court declined to exercise supplemental jurisdiction over him and dismissed the claims against him for lack of jurisdiction. *See* Mem.Op. (Dec. 28, 1998).

Subsequently, ARECO brought a motion for summary judgment on all claims. In an Order and accompanying Memorandum Opinion dated May 20, 1999, this Court granted summary judgment for ARECO on all claims except for the claim that ARECO violated Title VII. We then proceeded to analyze the Title VII claim.

---

1. Barrett testified that Ramsey showed her a gun in his office either the last week of August or the first week of September. She said that he stated that the gun was for defending against jealous husbands. She did not explain what this had to do with failing to report the harassment which by then had been occurring for nearly three months. Moreover, she had already consulted a lawyer before Ramsey showed her the gun.

2. ARECO discovered Ramsey's conduct as a result of an independent and unrelated inves-

tigation of his long-distance telephone bills. During that investigation, company president Wayne Zeigler inquired of other employees concerning Ramsey's telephone usage. When he did, he was told that he should speak to Barrett and for the first time learned of her harassment claim. She referred him to her lawyer.

3. The attorney who filed Barrett's EEOC complaint and who represented her at trial is the second attorney with whom Barrett consulted.

■ Under the Supreme Court's recent opinions addressing Title VII violations, an employer may assert a two-prong affirmative defense to escape liability. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The affirmative defense is only available if no adverse tangible employment action was taken by the defendant. *Id.* at 808, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. The first criteria centers on the employer's policies and whether it exercises reasonable care in preventing and promptly correcting any sexually-harassing behavior. *Id.* at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. The second prong then asks whether "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.; Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

Since ARECO took no adverse employment action against Barrett, it had an opportunity to assert the *Faragher/Ellerth* affirmative defense. Moreover, ARECO disseminated its sexual harassment policy to all employees (including Barrett) and the policy clearly provided for the complainant to bypass the harassing supervisor. Thus, this Court found that ARECO had satisfied the first prong of the affirmative defense. However, we declined to find that ARECO met its burden under the second prong concerning the reasonableness of the plaintiff's actions. *See* Order (May 5, 1999) and Mem.Op. (May 20, 1999). Accordingly, a two-day trial began on May 25 to determine ARECO's liability, if any, under the second prong of the *Faragher/Ellerth* affirmative defense. ARECO moved for a judgment as a matter of law both at the close of the plaintiff's case and at the close of all evidence. This Court denied both motions and the issue went to the jury, which returned a verdict in Barrett's favor and awarded $5,000 in damages.

After trial, ARECO renewed its motion for judgment as a matter of law. ARECO has also moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure under the theory that Barrett failed to file her claim with a state agency and failed to pursue her sexual harassment claims under state law as required by Title VII, *see* 42 U.S.C. § 2000e–5(c), thus stripping this Court of subject matter jurisdiction.

## ANALYSIS

### 1. Subject Matter Jurisdiction

■ The Virginia Council on Human Rights ("VCHR") is charged with administering the provisions of the Virginia Human Rights Act ("VHRA"), Va.Code § 2.1–714 *et seq.* The provision of Title VII at issue in this case states in pertinent part that

> [i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated ... If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

42 U.S.C. § 2000e–5(c). Thus, a plaintiff is required to exhaust administrative remedies prior to bringing a lawsuit under

Title VII. Additionally, if the plaintiff lives in what is known as a "deferral state," she will be required to exhaust any available state remedies. A "deferral state" is one which has a state or local law "prohibiting the unlawful employment practice alleged" and a state agency authorized "to grant or seek relief" from the practice. *See Davis v. North Carolina Dep't of Correction,* 48 F.3d 134, 137–40 (4th Cir.1995); *EEOC v. Hansa Products, Inc.,* 844 F.2d 191, 192 n. 1 (4th Cir.1988).

Virginia is such a "deferral state" and the Virginia Council on Human Rights is a "deferral agency" within the meaning of the statute with primary responsibility for enforcement of Title VII. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435 (4th Cir. 1998); *Capps v. City of Lynchburg,* 67 F.Supp.2d 589 (W.D.Va.1999). Although Virginia law does not create a specific cause of action for sexual harassment, the VHRA[4] broadly prohibits discriminatory employment practices and allows the VCHR to investigate claims of discrimination, bringing it within the parameters of § 2000e–5(c). *Tinsley,* 155 F.3d at 440. Thus, for this Court to possess subject matter jurisdiction over Barrett's complaint, she must have filed a discrimination claim with the Virginia Council on Human Rights (the appropriate state agency) alleging discrimination under the Virginia Human Rights Act (state law).

■ The Fourth Circuit has recognized that filing with the VCHR can be accomplished at the same time a claimant files an action with the EEOC. *See id.* at 439. When a charge of discrimination is sent first to the EEOC instead of the state deferral agency, the EEOC will refer the claim to the state agency. *Id.* This procedure is the product of a worksharing agreement between the EEOC and the Virginia Council on Human Rights. *See generally* 42 U.S.C. § 2000e–8(b). This work-sharing agreement states in pertinent part the following:

I. Introduction

B. In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State of Virginia and Federal laws.

II. Filing of Charges of Discrimination

A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both EEOC and the FEPA for purposes of ... Title VII.

Worksharing Agreement Between Virginia Council on Human Rights and Equal Employment Opportunity Commission for Fiscal Year 1998.

Two recent decisions by this Court concern the jurisdictional requirements of Title VII. In *Capps,* we determined that a unitary filing with the EEOC in which the complainant checked the box at the bottom of the standard EEOC charge form requesting that the charge be filed with both the EEOC and the state agency satisfies

---

4. The VHRA provides in pertinent part that:

It is the policy of the Commonwealth of Virginia [t]o safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status or disability ... in employment.

Conduct which violates any Virginia or federal statute or regulation governing discrimination on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability shall be an "unlawful discriminatory practice" for the purposes of this chapter.

Va.Code §§ 2.1–715 to 2.1–716.

the requirement that plaintiffs commence proceedings under state law. *See Capps,* 67 F.Supp.2d 589. That analysis was taken a step further in *Nash v. D.S. Nash Construction Co.,* 70 F.Supp.2d 639, 642 (W.D.Va.1999), where we found that checking the box was irrelevant inasmuch as the worksharing agreement between the EEOC and the VCHR ensured that a charge of discrimination filed with one agency was properly filed with the other. Accordingly, jurisdictional prerequisites based upon the commencement of proceedings under state law are met even if a claimant fails to check the box at the bottom of the EEOC's standard charging form, since the claim is forwarded to and properly processed by the VCHR anyway. *See Nash,* 70 F.Supp.2d at 642–43. Other federal courts in Virginia have reached the same or similar conclusions. *See Harris v. TJX Cos., Inc.,* 60 F.Supp.2d 562 (W.D.Va. 1999) (holding that plaintiff had exhausted state remedies where box was checked, EEOC transmitted charge to VCHR pursuant to the worksharing agreement, and VCHR declined to investigate); *Grimes v. Canadian American Transp., C.A.T.(U.S.), Inc.,* 72 F.Supp.2d 629 (W.D.Va.1999) (holding that jurisdiction in federal court is proper where plaintiff checked box and EEOC transmitted charge but VCHR declined to investigate); *Flippo v. American Home Prods. Corp.,* 59 F.Supp.2d 572 (E.D.Va.1999) (holding same); *Dew v. Nabisco, Inc.,* Civ. Action No. 3:99CV353 (E.D.Va., Richmond Div., Oct. 4, 1999) (even a failure to check the appropriate box on the standard EEOC charge form will not strip a federal court of jurisdiction since checking the box has no significance regarding how a claimant's charge is processed under the worksharing agreement). *But see Walker v. Electrolux Corp.,* 55 F.Supp.2d 501 (W.D.Va.1999) (holding that plaintiff had no jurisdiction in federal court because she failed to allege a state law claim, but failing to discuss pleading requirement to set forth charge of discrimination).

The above cases, including this Court's prior decision in *Nash* and the decision in *Dew v. Nabisco,* lead to the conclusion that Barrett has properly commenced proceedings under state law. So long as the charge is received and processed by the VCHR, there is no substantive difference between failing to check the box on the EEOC's standard form and filing a charge via a personalized letter that does not request that the charge be forwarded to the VCHR. In either case, the claimant's charge is actually forwarded to and processed by the VCHR solely because of the worksharing agreement between the two agencies. Moreover, Barrett's failure to explicitly request that her charge be forwarded to the VCHR had *absolutely no effect* on how the VCHR processed her claim once they received it, since any charge forwarded to the VCHR is reviewed for whether violations of state law are presented based on the substance of the factual allegations contained within the charge. *See Dew,* Civ. Action No. 3:99CV353.

The only potential hitch with finding that Barrett has met Title VII's jurisdictional requirements is the Fourth Circuit's unpublished decision in *Dodge v. Philip Morris,* 175 F.3d 1014 (Table), 1999 WL 162955 (4th Cir.1999). In *Dodge,* the Fourth Circuit noted that Title VII requires a plaintiff to pursue claims under Virginia state law in order to satisfy federal court jurisdictional prerequisites. However, like the plaintiff in *Nash,* Barrett *has* exhausted all available state law remedies since the VCHR fully processed her claim. *Cf. Nash,* 70 F.Supp.2d at 643; *Dew,* Civ. Action No. 3:99CV353. Moreover, as the *Nash* decision noted, *Dodge* is derived from *Davis,* 48 F.3d 134, a case in which the claimant affirmatively renounced state law relief Barrett has done no such thing here, as she merely filed a charge that alleged that she was being sexually harassed without mentioning either state or federal law. At any rate, *Dodge* is factually inapposite to this case: by filing a cus-

tomized letter Barrett could not have committed the same error as the plaintiff in *Dodge* of failing to check a box on the standardized form (there was, after all, no box for her to check and so no *implicit* renouncement of state law relief). Thus, *even if Dodge* were a published decision, it would not be controlling here.

On a broader level, it is worth noting that neither Title VII nor the VHRA requires a plaintiff to specifically refer to the federal statute or state code section that applies to the discrimination alleged. Instead, the VHRA only requires "a written statement by a person ... alleging an act of discrimination prohibited by § 2.1–716 of the Code of Virginia." 22 VAC 25–10–20. In short, the VHRA does not require a claimant to do anything more than make an allegation of discrimination. *See Nash,* 70 F.Supp.2d at 643; *Capps,* at 593; *Flippo,* 59 F.Supp.2d at 577 ("in Virginia, a written statement of facts lacking any citation to specific state statutes is sufficient to commence proceedings under state law"); *Dew,* Civ. Action No. 3:99CV353 (holding that "the making of a complaint with the EEOC or the VCHR setting forth a factual basis for employment discrimination is sufficient to commence proceedings under state law"). By filing a letter accompanied by a sworn and detailed supporting affidavit, Barrett met all of the requirements of both Title VII and the VHRA. Accordingly, this Court holds that Barrett met her burden under 42 U.S.C. § 2000e–5(c) and that this Court has subject matter jurisdiction to hear this case.

## 2. *Renewed Motion for Judgment as a Matter of Law*

In considering whether to grant a party's renewed motion for judgment as a matter of law,[5] the court must determine whether sufficient evidence exists in the record as a whole upon which a reasonable fact finder properly could return a verdict in favor of the prevailing party. *See* Fed. R.Civ.P. 50; *Herold v. Hajoca Corp.,* 864 F.2d 317, 319 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). In making this determination, the court must view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in its favor. *Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). However, the court should not weigh the evidence or assess the credibility of witnesses. *Id.; see also Herold,* 864 F.2d at 319.

ARECO conceded at trial that Ramsey sexually harassed Barrett for several months. Since ARECO took no adverse employment action against Barrett and has satisfied the first prong of the *Faragher/Ellerth* affirmative defense by disseminating an effective sexual harassment policy to its employees, the sole issue before this Court is whether Barrett's failure to avail herself of ARECO's sexual harassment policy was reasonable in light of both the circumstances of her sexual harassment and the overall purposes of Title VII. This Court holds that it was not and reverses the jury's verdict in Barrett's favor.

The Supreme Court adopted the *Faragher v. City of Boca Raton* and *Burlington Industries, Inc. v. Ellerth* affirmative defense to accommodate "Title VII's equally basic policies of encouraging forethought by employers *and* saving action by objecting employees." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 764, 118 S.Ct. 2257 (emphasis added). As for the second prong of that defense, the Court noted:

> while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration

---

**5.** In order to assert a Fed.R.Civ.P. 50 motion post-trial, a moving party must first make a motion for judgment as a matter of law (Rule 50(a)) prior to the case being submitted to the jury. The Court finds that defendant properly adhered to that requirement.

of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Id.* at 807–08, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. *See also Lissau,* 159 F.3d at 182 (citing *Faragher* to hold that *any* evidence that plaintiff failed to utilize the employer's complaint procedure will normally suffice to satisfy the employer's burden under the second element of the affirmative defense). While the second prong of the *Faragher/Ellerth* affirmative defense is not insurmountable and does not *automatically* bar recovery, the employee's failure to utilize corrective measures must be *reasonable.* In other words, merely because an employee has reasons for not reporting harassment is not sufficient to bar the employer's use of the affirmative defense.

 No court has sought to establish a bright line as to what is or is not reasonable as the term is contemplated in *Faragher* and *Ellerth.* However, courts have drawn some outer boundaries by holding that failing to utilize complaint procedures because of generalized retaliation concerns is not reasonable in light of the overall purposes of Title VII. *See Fierro v. Saks Fifth Ave.,* 13 F.Supp.2d 481, 492 (S.D.N.Y.1998) ("every employee who feels harassed by a supervisor will at some level fear the inevitable unpleasantness which will result from complaining to the employer.... However, to allow an employee to circumvent the reasonable complaint requirements of *Faragher* and *Burlington* by making conclusory allegations of feared repercussions, would effectively eviscerate an affirmative defense which the Supreme Court went to great effort to craft in order to stem the tide of unwarranted lawsuits."); *Hylton v. Norrell Health Care of New York,* 53 F.Supp.2d 613, 618 (S.D.N.Y.1999) ("Generalized fears such as 'I was afraid of repercussions' related to informing an employer of harassment in the workplace do not constitute reasonable grounds for an employee's failure to raise a complaint of harassment with his or her employer."); *Madray v. Publix Super Mkts., Inc.,* 30 F.Supp.2d 1371, 1375 (S.D.Fla.1998) ("An employee's generalized fear of repercussions cannot form the basis for an employee's failure to complain to his or her employer."); *Hetreed v. Allstate Ins. Co.,* 1999 WL 311728, at *6 (N.D.Ill. 1999) (plaintiff's fear of retaliation, "even if credited, is not a valid reason for not reporting the harassment, for it prevents the defendant company from taking corrective action"); *Jones v. USA Petroleum Corp.,* 20 F.Supp.2d 1379, 1386 (S.D.Ga.1998) (fear of repercussions as justification for failure to complain insufficient to withstand a motion for summary judgment). Requiring a plaintiff to step forward and complain despite her fears is necessary, since "[t]o permit an employee to disregard a policy of which she was admittedly aware based on generalized fears would require an employer to be automatically liable for harassment committed by a supervisor. This is a result which the Supreme Court expressly sought to avoid." *Madray,* 30 F.Supp.2d at 1376.

 Barrett argues that she could not complain to management about Ramsey's conduct because she was concerned about workplace retaliation. However, all harassment victims risk retaliation when they complain. If the purposes of Title VII are to be served, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place. Such evidence could be prior conduct by the company or management to actual complaints. Here, there was no evidence that ARECO had ever taken any adverse tangible employment action against complaining employees as that term is defined by the Supreme Court. *See Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). More-

over, the evidence revealed that Barrett did not believe that ARECO had ever taken any adverse employment action against complaining employees in the past. Since Barrett's fears of retaliation were subjective and generalized rather than objective and specific, her failure to utilize ARECO's complaint procedure cannot be held to be reasonable in light of the purposes of the *Faragher/Ellerth* affirmative defense.

Barrett also argues that alleged prior incidents of sexual harassment by two of the company's executives, including Lawrence Barrett, led her to believe that management would be unresponsive to her complaints. Unfortunately, viewing the evidence in the light most favorable to Barrett and drawing all reasonable inferences in her favor does not advance this argument. Neither actual prior incidents of harassment nor a well-founded (but factually-false) belief that prior incidents of harassment took place can justify a failure to report due to concerns about unresponsiveness. The evidence did not show that, had Barrett actually complained to management and had it failed to take any action, she would have been in any worse shape than she was by not complaining. This Court concludes that *speculative* concerns about management inaction are insufficient to justify a failure to report. If the preventative purpose of Title VII is to be effective, harassment victims must step forward and at least give management an opportunity to provide a remedy. By not complaining, Barrett did not give ARECO that opportunity.

Alternatively, Barrett argues the futility of complaining because several of ARECO's managers, including Company President Wayne Zeigler, were friends with Ramsey. However, in many small companies (like ARECO) managers are likely to be friends with one another. Unless the affirmative defenses of Title VII are less applicable to small companies than large companies, the level of management's

friendlessness cannot be an objectively reasonable basis for failing to utilize company complaint procedures. Otherwise, the purpose of Title VII—solving discrimination problems effectively and efficiently in the workplace rather than in the courtroom—can never occur when a company's management is on friendly terms since aggrieved parties will always have a reason for not stepping forward and utilizing an otherwise effective complaint procedure. In sum, this argument fails for exactly the same reasons as the management unresponsiveness argument above; even if Barrett could only complain to Ramsey's friend Zeigler, she had everything to gain if he responded to her complaint, but nothing to lose if Zeigler refused to rectify the situation because of his friendship with Ramsey.

However, Zeigler *was not* the only manager to whom Barrett could have complained since ARECO had a dozen separate managers. Barrett argues that six of the dozen worked in other buildings and were thus inaccessible to her. However, many of the remainder worked in other departments within the same building and were presumably more accessible. Barrett states that she did not know who all of these managers were because ARECO never posted a formal management listing. However, she did not explain why she did not seek to obtain that information by simply asking her coworkers.[6]

Alternatively, there was at least one manager in her own department—finance manager Greg Wilson—who Barrett knew and who was not friends with either Zeigler or Ramsey. Barrett justifies her failure to complain to Wilson by stating that he reported to Ramsey's friend Zeigler, was new, and had little contact with Barrett. However, for the reasons articulated above the fact that Wilson reported to Zeigler is irrelevant. Even accepting that it was reasonable for Barrett to not complain to Zeigler because of his friendship

---

**6.** The record indicates that Barrett knew many of her coworkers, as she had discussed

Ramsey's harassment with them instead of with management.

with Ramsey, that friendship does not affect Barrett's ability to complain to Wilson, who was friends with neither Zeigler nor Ramsey. Of course, it wasn't reasonable for Barrett to not complain directly to Zeigler in the first place and the argument about Wilson reporting to Zeigler is one step removed; thus, it cannot be reasonable to not complain to Wilson merely because he reported to Ramsey's friend.

Similarly, the fact that Wilson was a "new" manager does not justify Barrett's failure to complain to him. ARECO's sexual harassment policy does not limit the managers to whom a harassment victim can report to those with seniority. Instead, the policy states that an employee can report harassment to *any* manager. In any event, even if Wilson were powerless to solve Barrett's harassment problem because he was new, her complaint to him would not have affected her negatively in any way.[7] Finally, the fact that Wilson had little contact with Barrett, if found to be a reasonable basis for not complaining, would eviscerate the second prong of the *Faragher/Ellerth* test. In many Title VII cases the harassment victim will often have to reach beyond their immediate supervisor (who is often their harasser) in order to complain to other lesser-known managers or company officials. It is a burden for the victim, but one that the Supreme Court requires under the second prong of the *Faragher/Ellerth* affirmative defense in order to serve the remedial and preventative purposes of Title VII.

Taken as a whole, Barrett's failure to report Ramsey's conduct to ARECO management cannot be found to be reasonable under the circumstances. During the period of her harassment, Barrett complained to her husband, a former boyfriend, a policeman, two attorneys, a counselor, and fellow employees. However, she never told management that she was being harassed. She did not even tell ARECO management that she had hired a lawyer and filed a complaint with the EEOC. Instead, she continued to work for ARECO, collecting evidence for her lawsuit while the company was forced to independently discover Ramsey's conduct. Barrett's failure to notify ARECO's management that she was being sexually harassed was not only unreasonable, but presents precisely the type of situation that the *Faragher/Ellerth* affirmative defense seeks to avoid. Had she utilized ARECO's complaint procedure early-on, months of harassment could have been prevented and ARECO would have been able to swiftly take corrective action.

There is one final issue before this Court. At the hearing on the renewed motion for judgment as a matter of law, ARECO raised a defense not argued at trial or in the post-trial briefs. That defense was based on the recent case of *Brown v. Perry*, in which the Fourth Circuit noted that an employer arguing the *Faragher/Ellerth* affirmative defense is not limited to showing that an employee unreasonably failed to follow company complaint procedures or take advantage of employer-provided corrective opportunities; instead, "an employer can prove the second element of the affirmative defense by demonstrating that the 'plaintiff employee unreasonably failed ... to avoid harm otherwise.'" *Brown v. Perry*, 184 F.3d 388, 397 (4th Cir.1999) (*quoting Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257). The basis for invoking *Brown v. Perry* is Barrett's own conduct toward Ramsey, including that during the June, 1997 trip to Atlantic City. However, because there are

---

7. The Court notes that, to some extent, Barrett is trying to have it both ways. On the one hand, she is reluctant to complain to some senior company executives because they may have participated in prior acts of sexual harassment and would presumably be unlikely to respond to her complaints. If that is the case, a new manager like Wilson would be the perfect person with whom to discuss Ramsey's harassment because he is new to the company and its culture, is not friends with the other managers, and has not participated in any prior acts of harassment.

sufficient alternative grounds to decide the motion, we do not reach the argument that Barrett "unreasonably failed … to avoid harm otherwise."

## CONCLUSION

ARECO's motion to dismiss for lack of subject matter jurisdiction is DENIED. However, because Barrett unreasonably failed to notify management that she was being sexually harassed, ARECO's renewed motion for a judgment as a matter of law is GRANTED.

## ORDER

Defendant Applied Radiant Energy Corporation filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and a renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. For the reasons set forth in the attached Opinion,

(1) defendant's motion to dismiss is DENIED

(2) defendant's renewed motion for a judgment as a matter of law is GRANTED.

The Clerk is hereby directed to send a certified copy of this Order and the attached Opinion to all counsel of record and to strike the case from the docket.