Tara YOUNG, Plaintiff,

v.

**R.R. MORRISON AND SON, INC.
and Rex Moody, Individually,
Defendants.**

No. Civ.A. 1:00CV92–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 28, 2000.

Jimmy D. Shelton, Jimmy D. Shelton & Associates, Tupelo, MS, for Plaintiff.

Meta V. Swain, Brunini, Grantham, Grower & Hewes, Jackson, MS, for Defendants.

## OPINION

DAVIDSON, District Judge.

Before the court is the motion of the Defendant, R.R. Morrison and Son, Inc., for summary judgment. Upon due consideration, the court finds that the Defendant's motion should be granted.

### Factual Background[1]

The Plaintiff Tara Young (Young) has filed the underlying Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* alleging a claim of sexual harassment/hostile work environment.

Young began employment with the Defendant R.R. Morrison and Son, Inc., (Morrison) on July 31, 1996, as a manager in training of Morrison's Tupelo, Mississippi, convenience store operating under the name "Fast Lane." Young was interviewed and hired by the Defendant Rex Moody (Moody), who, at all times relevant to this cause of action, was her direct supervisor. Plaintiff contends that beginning in early 1997, Moody began sexually harassing her. His advances escalated over the ensuing months, becoming increasingly romantic and sexual in nature. Consequently, in April 1998, Young voluntarily resigned from employment with Morrison and moved from the Tupelo, Mississippi area.

In June 1998, Young returned to work with Morrison, presumably under the assumption that Moody was resigning from the company. The Plaintiff, however,

---

1. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The court's factual summary is so drafted.

found herself again under the direct supervision of Moody and maintains that the harassment promptly resumed. On October 5, 1999, Young submitted a letter to Robert Morrison, III, President of R.R. Morrison and Son, Inc., alleging that Moody was sexually harassing her and requesting a leave of absence. Morrison granted Young's request and launched an investigation into her claims, ultimately concluding that Moody's conduct did not rise to the level of sexual harassment but was inappropriate nonetheless. Although Morrison determined that Moody should be terminated, the Defendant allowed him to resign on October 8, 1999. Thereafter, Young agreed to resume employment with the Defendant effective November 8, 1999; however, she failed to return on that date and ultimately abandoned her employment.

The Defendant now moves for summary judgment. Morrison principally contends that Young's claim is barred by the affirmative defense created by the Supreme Court in *Burlington Industries., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

### Legal Analysis

#### A. Summary Judgment Standard

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("The burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case."). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." Fed. R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

#### B. Applicability of the Ellerth/Faragher Affirmative Defense

In 1998, the Supreme Court rendered dual decisions establishing an affirmative defense for employers facing hostile work environment sexual harassment claims. In *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court addressed the standard for imposing vicarious liability when an employer's supervisors are accused of creating a sexually hostile work environment. The Court, in establishing the elements of the defense, concluded that employers may escape liability for their supervisor's conduct if 1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and 2) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities" provided by the employer or to avoid harm

otherwise. *Ellerth*, 524 U.S. at 765, 118 S.Ct. at 2257. This defense, according to the Court, promotes "Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275, 141 L.Ed.2d 662, *Ellerth*, 524 U.S. at 764, 118 S.Ct. at 2257.

Recently, the Fifth Circuit elaborated on the approach courts should utilize in applying the *Ellerth/Faragher* affirmative defense. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir.2000). By way of a road map analogy, the court advised:

> At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." If he has, his suit is classified as a "quid pro quo" case; if he has not, his suit is classified as a "hostile environment" case.

*Casiano*, 213 F.3d at 283. Tangible employment actions "require[ ] an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at n. 6 (quoting *Ellerth*, 524 U.S. at 761–62, 118 S.Ct. 2257, 141 L.Ed.2d 633) ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer."); *Faragher*, 524 U.S. at 804–05, 118 S.Ct. 2275, 141 L.Ed.2d 662.

■ Here, the Defendants argue and this court agrees that the Plaintiff's cause of action is properly classified as a hostile work environment claim. Based on the record before the court and viewing the facts in the light most favorable to the Plaintiff, it appears that Young has not suffered any tangible employment action, as that term is defined above. She was not fired, passed over for promotion, reassigned, or given any change in benefits. Indeed, both of her separations from employment with the Defendant were at her behest. Furthermore, it appears that the parties do not substantially dispute this issue, as the Plaintiff has proffered her claim as one for hostile work environment sexual harassment.

■ Thus, "if the first-stop question is answered in the negative, i.e., the employee did not suffer a tangible employment action ... the suit is a 'hostile environment' case, and the other branch at the fork in the *Ellerth/Faragher* road must be followed."[2] *Casiano*, 213 F.3d at 284. On this avenue, the inquiry proceeds as follows:

> If proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment? If they do not, Title VII imposes no vicarious liability on the employer; but if they do, the employer is vicariously liable—unless the employer can prove both prongs of the *Ellerth/Faragher* affirmative defense, to wit: Absent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

---

**2.** In a "quid pro quo" case, the road branches toward a second stop at which the court must determine whether the tangible employment action resulted from the employee's acceptance or rejection of her supervisor's alleged sexual misconduct. If the employee is unable to show such a nexus, then her employer is not vicariously liable for sexual harassment by a supervisor; but if the employee can establish such a nexus, then the employer is vicariously liable *per se* and is not entitled to assert the *Ellerth/Faragher* affirmative defense. *Casiano*, 213 F.3d at 283–84.

*Id.* at 284. Therefore, the first question the court must address is whether Moody's alleged conduct was sufficiently severe or pervasive to create an actionable hostile environment.

The Plaintiff avers that Moody consistently sexually harassed her during her 2½ year tenure with Morrison. This harassment allegedly occurred both at work and away from the office, and included romantic letters, telephone calls, and repeated requests that Young have sex with him. Additionally, her October 5, 1999 letter to Morrison stated that she felt her life could be in danger because of Moody's escalating advances. The court also notes that the summary judgment evidence submitted by the Defendant includes three letters written to the Plaintiff by Moody which are, at a minimum, disturbing and plainly reflect an individual grappling with serious emotional issues.

While the Defendant concedes that Moody's conduct was "inappropriate," it nonetheless argues that his alleged actions did not create a hostile work environment. To this end, Morrison contends that the Plaintiff not only welcomed Moody's sexual advances, but also that she profited financially from his attentiveness and received preferential on-the-job treatment. Indeed the Defendant characterizes the Plaintiff as a manipulative opportunist seeking financial reward and job security. Under either the Plaintiff's or the Defendant's version of the facts, the court finds the entire factual scenario disturbing.

In light of the record before it, the court acknowledges that the Plaintiff has at least demonstrated the existence of a genuine issue of material fact whether Moody's alleged sexual harassment rises to the level of "severe or pervasive." To proceed along the *Ellerth/Faragher* affirmative defense road map, the court will assume *arguendo* that the conduct was sufficiently severe and pervasive to meet the Plaintiff's Title VII burden. Thus, based on the complete record presented to the court and Young's failure to cite any additional material evidence, we find that the facts of this case fall squarely within the *Ellerth/Faragher* affirmative defense.

In support of its burden, Morrison argues that it exercised reasonable care to both prevent and promptly correct any sexually harassing behavior by supervisory personnel and that Young unreasonably failed to take advantage of the Defendant's preventative or corrective opportunities or to avoid the harm otherwise. The court will address these points in turn.

### 1. Reasonable Care to Prevent and Correct Sexual Harassment

Morrison's "Employee Policy Handbook" provides in pertinent part:

> Any employee who has a complaint of sexual harassment at work by anyone, including supervisors, co-workers, or visitors must bring the problem to the attention of a responsible Company official. If the complaint involves someone in the employee's direct line of command, then the employee may go to another supervisor with the complaint.

Defendant's Motion for Summary Judgment, Ex. C. Each Morrison employee was provided an "Employee Policy Handbook," asked to read the company policies contained therein, and sign an acknowledgment that they had thoroughly reviewed its contents. Young signed acknowledgment forms on two separate occasions, yet the evidence indicates that she did not avail herself of the procedures provided in the Handbook. In addition to the above policy, Morrison had in place an anonymous reporting system for sexual harassment complaints. Since 1998, Morrison has maintained a toll-free hotline for employees to utilize in reporting incidents of perceived sexual harassment. Notices con-

cerning the hotline were distributed with paychecks and publicized in company newsletters and on posters placed prominently in each store.

In response, Young submits a conclusory argument that the Defendant's sexual harassment policy is insufficient to meet the demands of Title VII. No further support is offered for this contention.

Morrison concedes that Moody was first accused of sexual harassment in 1998 by Cathie Fooshee, also an employee at the Tupelo store where Young worked. Morrison launched a prompt investigation into Fooshee's claims. The Defendant interviewed fifteen employees at the Tupelo store, including the Plaintiff, who was specifically questioned whether Moody had harassed Fooshee or any other Morrison employee. Young not only stated that she had not seen Moody harass Fooshee, but also denied that Moody had sexually harassed her or any other Morrison employee.

When the Plaintiff finally notified Morrison of Moody's alleged misconduct, the Defendant responded promptly and effectively: It launched an investigation into Young's allegations, accommodated her request for a temporary leave of absence, determined that Moody should be terminated, and ultimately accepted his resignation on October 8, 1999, three days after the Plaintiff complained to Morrison. The court is of the opinion that Morrison's sexual harassment policy and its response to Young's harassment complaint were both reasonable and vigorous. *See, e.g., Carmon v. Lubrizol Corp.,* 17 F.3d 791, 793–95 (5th Cir.1994); *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 403–04 (5th Cir.1993).

2. *Failure to Take Advantage of Preventive or Corrective Opportunities*

■ Although the second prong of the *Ellerth/Faragher* affirmative defense is not insurmountable, an employee's failure to utilize corrective measures must be reasonable. *Barrett v. Applied Radiant Energy Corp.,* 70 F.Supp.2d 644, 652 (W.D.Va.1999). Mere "reasons" for not reporting harassment are insufficient to bar the employer's use of the affirmative defense. "No court has sought to establish a bright line as to what is or is not reasonable as the term is contemplated in *Faragher* and *Ellerth." Id.* Courts have, however, drawn outer boundaries by instructing that "failing to utilize complaint procedures because of generalized retaliation concerns is not reasonable in light of the overall purposes of Title VII." *Id; see Madray v. Publix Super Mkts., Inc.,* 30 F.Supp.2d 1371, 1375 (S.D.Fla.1998) (employee's generalized fear of repercussions cannot form the basis for failure to complain to his or her employer.); *Hetreed v. Allstate Ins. Co.,* No. 96 C 2021, 1999 WL 311728, at * 6 (N.D.Ill. May 12, 1999) (Fear of retaliation, "even if credited, is not a valid reason for not reporting the harassment, for it prevents the defendant company from taking corrective action."); *Jones v. USA Petroleum Corp.,* 20 F.Supp.2d 1379, 1386 (S.D.Ga.1998) (fear of repercussions as basis for failure to complain insufficient to withstand motion for summary judgment). Compelling a plaintiff to come forward despite perceived repercussions is essential, since "[t]o permit an employee to disregard a policy of which she was admittedly aware based on generalized fears would require an employer to be automatically liable for harassment committed by a supervisor. This is a result which the Supreme Court expressly sought to avoid." *Madray,* 30 F.Supp.2d at 1376.

Young argues that she could not complain to management about Moody's conduct because she was concerned about workplace retaliation. Specifically, she claims that she lied during the investiga-

tion initiated by Fooshee because of threats by Moody that she would be fired if she complained. Moreover, Young alleges that she perceived management to be unresponsive because Moody had "weathered the storms of complaints about him before."

All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, the reasons for not complaining about harassment should be "substantial and based upon objective evidence that some significant retaliation will take place." *Barrett,* 70 F.Supp.2d at 653. For example, a plaintiff may bring forward evidence of prior unresponsive action by the company or management to actual complaints. Here, there was no evidence that Morrison had ever taken any adverse tangible employment action against complaining employees as that term is defined by the Supreme Court. *See Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257, 141 L.Ed.2d 633. The court is of the opinion that Young's fears of retaliation were subjective and generalized rather than objective and specific and her failure to utilize Morrison's complaint procedure cannot be held to be reasonable in light of the purposes of the *Ellerth/Faragher* affirmative defense.

As noted above, Young argues that alleged prior incidents of sexual harassment by Moody, led her to believe that management would be unresponsive to her complaints. However, viewing the evidence in the light most favorable to Young and drawing all reasonable inferences in her favor does not assist this argument. "Neither actual prior incidents of harassment nor a well-founded (but factually-false) belief that prior incidents of harassment took place can justify a failure to report due to concerns about unresponsiveness." *Barrett,* 70 F.Supp.2d at 653. Young cites the outcome of the investigation into Cathie Fooshee's allegations against Moody as support for her contention that Morrison would have been unresponsive to her complaints. Thus, it appears that the Plaintiff's strategy was to unequivocally mislead Morrison regarding Moody's misconduct, then attempt to utilize Morrison's inaction as a basis for relief. This court cannot countenance such an approach under Title VII.

The court, therefore, holds that speculative concerns about management inaction are insufficient to justify a failure to report. If the preventative purpose of Title VII is to be effective, harassment victims must step forward and at least give management an opportunity to provide a remedy. By not complaining and by entirely misleading Morrison, Young did not give the Defendant that opportunity. From early 1997 to April 1998 and again from June 1998 until October 1999, Young did not complain about Moody's inappropriate behavior. Indeed, when presented with the opportunity to apprise Morrison of Moody's harassment during the investigation instigated by Cathie Fooshee, Young chose to deceive the Defendant. The Fifth Circuit has instructed:

> When an employer initiates a good-faith investigation of charges of discrimination, it must be able to rely on the evidence it collects.... When there is no evidence that the investigation was heavily skewed against a complainant's interest, this court cannot sanction such deceptive conduct.

*Scrivner,* 169 F.3d at 971–72.

▮ Considering Young's efforts and assuming for summary judgment purposes that the Plaintiff's allegations against Moody are true, the only reasonable conclusion the court can reach is that Young unreasonably failed to take advantage of the preventive or corrective measures afforded her by Morrison or to avoid harm otherwise. By her own account, she suffered sexual advances and propositions for

approximately 2½ years yet remained silent. When given the opportunity to speak out, she represented to Morrison that she had never seen Moody harass Fooshee or anyone else, including herself. While she now alleges that she feared repercussions from complaining, she has come forward with no evidence that she would have been putting herself or her employment in jeopardy by revealing Moody's conduct.

The court concludes that there is no genuine issue of material fact in this matter, and the Defendant is entitled to a judgment as a matter of law. "When faced with a properly supported motion for summary judgment, a non-movant, such as plaintiff, cannot merely 'sit back and wait for trial.'" *Hinton v. Teamsters Local Union No. 891*, 818 F.Supp. 939, 944 (N.D.Miss.1993) (quoting *Page v. De Laune*, 837 F.2d 233, 238 (5th Cir.1988)). Accordingly, the Defendant's motion for summary judgment shall be granted.