**Michelle MAY, Plaintiff,**

v.

**AUTOZONE STORES, INC., Defendant.**

**No. 1:00CV449–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Dec. 14, 2001.

---

John David Weddle, Nickles & Weddle, PLLC, Tupelo, MS, for Plaintiff.

Walter Alan Davis, Holcomb Dunbar, Oxford, MS, Claude F. Clayton, Jr., Claude F. Clayton, Jr., Attorney, Tupelo, MS, Tracy Kern Hidalgo, George J. Ditta, II, Heather A. Cross, Frilot Partridge Kohnke & Clements, New Orleans, LA, for Defendant.

## OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVIDSON, Chief Judge.

Presently before the court is the Defendant's motion for summary judgment. Upon due consideration, the court finds that the motion should be granted in part and denied in part.

### A. Factual Background

The Plaintiff, Michelle May, was hired by Defendant Autozone Stores, Inc. ("Autozone") on or about June 4, 1997 to work in their store in Ripley, Mississippi. May was interviewed and hired by Joseph Buehrle. During May's employment, Joseph Buehrle and Tommy Tyler were the area advisors over the Ripley store. May was hired as a parts counter sales person or "red shirt" for the Ripley store, but within approximately 20 days was promoted to the position of parts sales manager ("PSM"), which is an hourly management position. During the entire time May worked for Autozone, which lasted approximately 23 months, Jerry Crawford was the store manager.

The Ripley store, which is relatively small, does not have an assistant manager position. Therefore, a PSM, such as May, would be responsible for the total operation of the store in the absence of the store manager. The store manager is supervised by and reports directly to an area advisor. Area advisors report to the district manager. Linda Moore was the district manager over the Memphis District, in which the Ripley store was included.

May alleges that, during her employment with Autozone, she was the victim of sexual harassment by Crawford in viola-

tion of Title VII of the Civil Rights Act of 1964. May alleges that beginning approximately two months after she started working, Crawford asked her several sexually related questions throughout her employment.[1] Specifically, without including all of the statements May cited in her deposition, May stated that Crawford asked her if she "ever g[o]t tired of having sex with the same man" and would often ask her if "anyone ever got lost in [her] breasts before." May also asserts that once when she stated I'm going to the restroom, Crawford responded with "can I go with you, can I hold your hand?" May claims that David Brotherton[2] overheard this comment. Furthermore, Crawford also made comments related to Viagra to May. May stated that Crawford would make inappropriate comments about female customers. May claims she overheard Crawford making remarks about Missy Evan's "butt in front of" the two women. Missy Evans was an employee at the Ripley store for some time before she transferred to a different location. May stated that Evans complained to her, and possibly to others, about Crawford's harassing conduct.

May also mentioned an instance when she ripped her pants at work while on a ladder and tried to cover it up with her shirt. When she told Crawford she needed to go home and change, he allegedly began tugging at her shirt and said "let me see." May claims that on one occasion Crawford brought in computer print-outs he got off the internet of sexual objects. May also mentioned another time when Crawford brought in a computer print-out that contained naked people. May asserts that Crawford said he "brought it in to show Danny [Purcell] but don't tell nobody else" and propped it against the printer in the back.

May asserts that she told the other PSMs at the store, who would be considered equal management, about the sexual harassment from Crawford. May asserts that she spoke to both area advisors generally of problems she was having with Crawford and asked them to come down and set up a meeting. May states that she personally talked to Buehrle in Memphis. May admits that she did not specifically tell Buehrle that she was being sexually harassed but states that she told him, among other things, that "there was problems going on between Jerry and myself." She claims she further complained to Buehrle about Crawford's problems with customer relations and that he was "degrading to the other Autozoners." May similarly claims she talked to Tyler on the phone and complained generally about Crawford. Tyler stated that he did not recall May ever contacting him about problems with Crawford or to request any kind of meeting.

May's last day of work was sometime around April 12, 1999. Apparently, she took some time off around then to have her wisdom teeth pulled out, and after getting into an argument over the phone with Crawford, never came back to work. She then called Linda Moore and told her about the recent problems with Crawford, and that he had been sexually harassing her. May eventually went into the store, dropped her keys off on the counter and told the employee at the counter she could

---

**1.** May testified in her deposition to all of the offensive things she could remember that Crawford said. In addition to those listed above, she listed approximately three other statements, which the court declines to recite.

**2.** The court can not determine from the record who Brotherton is, or if he was an employee, what his position was. The same is true of Danny Purcell, who appears to have been an Autozone employee at some time based on May's deposition.

not take it any more.[3] After the conversation with Moore, Steve Boggan, who was the Loss Prevention Advisor, got in touch with May and wanted to set up a meeting with her to further discuss the problems with Crawford. However, May never attended the meeting.

Eventually, on or about June 17, 1999, Crawford was written up for a "Corrective Action Review" by Tyler for "comments and jesters made in an inappropriate manner." Tyler stated he was out of town on business during the time May called Moore and was not involved with much of the investigation of Crawford. According to Tyler, Crawford was later fired around September of 2000 for sexual harassment involving two other women.

After filing a charge with the EEOC on or around July 26, 1999 and properly exhausting her administrative remedies, May filed the current suit against Autozone[4] on November 13, 2000, alleging that, during her employment with Autozone, she was the victim of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. After conducting discovery, Autozone filed the current motion for summary judgment on September 12, 2001. For the reasons set forth below, the court finds the motion should be granted in part and denied in part.

### B. Summary Judgment Standard

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to

support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

### C. Discussion

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e–2(a)(1) (2000). The Supreme Court has

---

**3.** It is unclear from the depositions and the record as a whole, the date when May actually quit, and at what point Autozone viewed her as no longer being employed there.

**4.** May originally filed the suit against Autozone, Jerry Crawford, Joseph Buehrle, and Tommy Tyler. May subsequently agree to dismiss the individual defendants.

recognized a distinction in Title VII sexual harassment cases between those based on threats that are carried out (often referred to as *quid pro quo* cases) and those where bothersome attentions or sexual remarks create a hostile work environment. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998).

### 1. May's Quid Pro Quo claim and "Tangible Employment Action"

The Fifth Circuit has elaborated on the approach courts should utilize following the Supreme Court's decisions in *Ellerth* and *Faragher*.[5] *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir.2000). By way of a road map analogy, the court advised:

> At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." If he has, his suit is classified as a "quid pro quo" case; if he has not, his suit is classified as a "hostile environment" case.

*Casiano*, 213 F.3d at 283. To prevail on a quid pro quo claim of harassment, May must show that she suffered a tangible employment action at the hands of her supervisor. *Id.* at 283–84. Tangible employment actions require an official act of the enterprise, i.e., a company act, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 284 n. 6 (quoting *Ellerth*, 524 U.S. at 761–62, 118 S.Ct. 2257).

■ May's complaint states that "Plaintiff suffered a tangible effect on the compensation, terms, conditions or privileges of employment as a consequence of a refusal to submit to the quid pro quo harassment imposed by ... Jerry Crawford."

Complaint, ¶ VII. May further stated that "because the sexual harassment caused Plaintiff to leave her employment and because the said harassment interfered with her advancement within the company, the sexual harassment claimed in the Plaintiff's complaint did, in fact, result in a tangible job detriment." Response Brief at 2.

Here, the court agrees with Autozone that May has not suffered· any tangible employment action, as that term is defined above. When an employee quits, even when under stressful or undesirable conditions, it simply is not a company act. May was not fired, and has presented no evidence that she was passed over for a promotion, reassigned, or given any change in benefits. *See Young v. R.R. Morrison & Son, Inc.*, 159 F.Supp.2d 921, 924 (N.D.Miss.2000) (holding that because Plaintiff chose to leave her employer, she did not suffer any tangible employment action). The court is of the opihion, that with regard to the *quid pro quo* claim by May, there are no issues of material fact and Autozone is entitled to judgment as a matter of law. As such, the court must address May's hostile work environment claim.

### 2. May's Hostile Work Environment claim

■ When the first-stop question is answered in the negative, i.e., the employee did not suffer a tangible employment action, the suit is a "hostile environment" case, and the other branch at the fork in the *Ellerth/Faragher* road must be followed. *Casiano*, 213 F.3d at 284. On this branch, the inquiry ensues as:

> If proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment? If they do not, Title VII imposes

---

**5.** *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

no vicarious liability on the employer; but if they do, the employer is vicariously liable—*unless* the employer can prove both prongs of the *Ellerth/Faragher* affirmative defense, to wit: Absent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* at 284. Therefore, the first question the court must address is whether Crawford's alleged conduct was sufficiently severe or pervasive to create an actionable hostile environment.

The Supreme Court has explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Faragher*, 524 U.S. at 810, 118 S.Ct. 2275 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–371, 126 L.Ed.2d 295 (1993)). The Court directed other courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275.

The court is of the opinion that the alleged statements made by Crawford were more than "a mere offensive utterance" and that some of the statements were severe and humiliating. While making all legitimate factual inferences in favor of the non-movant, the court is not satisfied that no reasonable trier of fact could find that the alleged conduct against May in the present case was sufficiently severe or pervasive to meet the Title VII burden.

Autozone argues that even if Crawford's conduct rose to the level of a hostile work environment, Autozone is entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense. As stated by the Supreme Court:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. See Fed.Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

As the court has already noted, there was no tangible employment action taken in the present case. However, Autozone is the party moving for summary judgment here, and as such, has the burden of proving both elements necessary to this affirmative defense. Autozone does promulgate rules and policies regarding sexual harassment and maintains a 1–800 phone

number that employees may call to discuss such problems. There is a provision in the Employee Handbook that states in part "[i]f you believe that you've been harassed, tell your manager at once, or report the situation directly to your Area Advisor. You may also contact the Vice–President of Human Resources, the Director of Auto Zoner Services, or the Auto Zoner Relations Manager at 1–800–510–1033."

In the present case, Tyler stated that Autozone employees are required to go through an orientation which includes instruction on sexual harassment. The completion of this orientation is evidenced by the signing of a sexual harassment fact sheet that is to be put in that employee's personnel file. Crawford's personnel file apparently did not contain any signed sexual harassment fact sheet and Tyler did not know why. Furthermore, for some reason also unknown to Tyler, Crawford's personnel file contained a drug and alcohol testing policy, signed by Crawford and dated 7/3/2000, which would have been after May quit and years after Crawford began working there.

The Court in *Faragher* noted that recognition of employer liability is underscored by the fact that "the employer has a greater opportunity to guard against misconduct by supervisors than by common workers; employers have greater opportunity and incentive to screen them, train them, and monitor their performance." *Faragher*, 524 U.S. at 803, 118 S.Ct. 2275. There the Court noted that the supervisors "were granted virtually unchecked authority" over their subordinates, and that the defendant's officials made no attempt to keep track of the conduct of the supervisors. *Id.* at 808, 118 S.Ct. 2275.

While May admitted that she did eventually understand the policies in the handbook, she claims she did not receive one until around February of 1998, over eight months after she began working. May also stated she never went through any orientation, nor did she ever see any video training related to sexual harassment.

The court is of the opinion that genuine issues of material fact exist and therefore, Autozone's motion for summary judgment is denied as to May's hostile work environment claim.

### D. Conclusion

In sum, Defendant's motion for summary judgment shall be granted in part and denied in part. Defendant's motion for summary judgment is granted as to the *quid pro quo* claim against Autozone as there is no evidence of a tangible employment action taken against May, and as such, Autozone is entitled to judgment as a matter of law on that claim. Defendant's motion for summary judgment shall be denied as to the hostile work environment claim. There are genuine issues of material fact and credibility determinations which preclude summary judgment as to that claim.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendant's motion for summary judgment (docket entry 29) is GRANTED IN PART and DENIED IN PART;

(2) the motion shall be GRANTED as to the Plaintiff's claim for *quid pro quo* sexual harassment in violation of Title VII;

(3) the motion shall be DENIED as to the Plaintiff's hostile work environment claim in violation of Title VII.

All memoranda, depositions, declarations, and other materials considered by the court in ruling on this motion are hereby incorporated into and made a part of the record in this action.