Jacqueline HARPER Plaintiff

v.

CITY OF JACKSON MUNICIPAL SCHOOL DISTRICT and Fred Casher Defendants

No. CIV.A. 3:02–CV1649WS.

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 16, 2005.

Glen W. Hall, Stanfield, Hall & Associates, Guy N. Rogers, Jr., Guy N. Rogers, Jr., Attorney, Jackson, MS, for Jacqueline Harper, Plaintiff.

Betty A. Mallett, McGlinchey Stafford, James A. Keith, Adams and Reese, JoAnne N. Shepherd, Jackson Public School District, Elizabeth Lee Maron, Adams and Reese, Samuel E. Scott, McGlinchey Stafford, Jackson, MS, for City of Jackson Municipal School District, Fred D. Casher individually and as agent of City of Jackson Municipal School District, Defendants.

### ORDER GRANTING SUMMARY JUDGMENT

WINGATE, Chief Judge.

Before this court are defendants' motions for summary judgment [**docket # 30–1 and # 32–1**], filed pursuant to Rule 56(b) [1] and (c),[2] Federal Rules of Civil Procedure. Plaintiff herein is Jacqueline Harper, who contends in her lawsuit filed under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e–5(b).[3] that

1. FED. R. CIV. P. 56(b) provides: "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

2. FED. R. CIV. P. 56(c) provides:

The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

3. Title 42 U.S.C. §§ 2000e–5(b) provides in pertinent part:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commis-

the defendants are liable to her pursuant to her claims of sexual harassment and retaliation. The defendants herein are the City of Jackson, Mississippi, Municipal School District and Fred Casher ("Casher"), the former school principal of Callaway High School, one of the schools comprising the City of Jackson, Mississippi, Municipal School District ("District"). In addition to their motions for summary judgment, the defendants, in the alternative, have challenged plaintiff's claim for punitive damages, said challenge also being brought under Rule 56(b) [docket # 33–1]. The defendants, furthermore, have before this court their motion to strike plaintiff's response to the District's motion for summary judgment and brief in support thereof [docket # 36–1]. According to defendants, plaintiff failed to file the above in a timely manner as required by the rules. For the reasons explained below, this court grants both defendants' motions for summary judgment and terminates defendants' other motions as moot.

## I. *Pertinent Facts and Procedural History*

At the times pertinent to the plaintiff's complaint, defendant Fred Casher was the principal of Callaway High School in Jackson, Mississippi, while plaintiff Jacqueline

Harper was a teacher at that same institution. Jacqueline Harper, a divorcee and mother of three children, obtained a bachelor's degree in business education in 1978, a master's degree in business education in 1979, and a specialist degree in business education in 1982. She also took some courses in administration during the 1990s. Ms. Harper has taught students from the middle school level to the post-secondary school level.

Fred Casher, a graduate of Jim Hill High School in Jackson, Mississippi, earned a Bachelor of Arts from Jackson State University, Jackson, Mississippi, and went on to obtain two master's degrees, one in History and Education and the other in Supervision and Administration from that same institution. After employment as a teacher, later assistant principal, Casher eventually was named principal at Callaway in 1996. He remained at Callaway as principal for some six years before being transferred as a result of plaintiff's accusations.

Plaintiff Jacqueline Harper ("Harper") says she endured ongoing sexual harassment resulting from Casher's conduct, beginning after his hiring in December of 1996 as principal at Callaway and continuing until Harper submitted her complaint

---

sion determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $ 1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d), from the date upon which the Commission is authorized to take action with respect to the charge.

to the District in February of 2001. In her deposition, plaintiff contends that during this period Casher repeatedly propositioned her for sex, uttered racy statements to her, ran his hand up her thigh towards her private area, licked his tongue at her suggestively, felt her behind and even "snatched [her] breast out of [her] dress and stuck it in his mouth." So allegedly distraught at Casher's conduct, plaintiff says that at times upon his approach she would run and hide in the bathroom from him. The encounters between plaintiff and Casher were always private, says plaintiff, so no one else ever observed these occurrences. According to plaintiff, even though she confidentially related her ongoing ordeal to several of her colleagues, over this entire period until her complaint of February 2001, neither she nor any of her colleagues reported this matter to the administrators for the District. Plaintiff, however, claims she secretly tape-recorded a conversation with Casher, in which conversation[4] she mentioned past sexual comments that allegedly he had made to her. Supposedly, Casher admitted making the comments, said that he was just joking and apologized. Further, he told plaintiff that if she did not accept his apology, she had the right to go downtown and file a formal grievance. Plaintiff did not do so because she says she thought the harassment would stop. This was in 1996.

On February 6, 2001, plaintiff telephoned Dr. Delores Hopkins, Assistant Superintendent for the Jackson Public School District, and told her about the years of alleged sexual harassment. Plaintiff says she tolerated Casher's behavior all those years and failed to report his conduct to his superiors because she was intimidated by his position and fearful of being discharged. During this time, Harper was aware of the District's harassment procedures and understood the filing procedures.

In March of 2001, Harper filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), pursuant to Title 28 U.S.C. § 2000e–5(a).[5] In her complaint, Harper stated that she had received no support from the District. The EEOC issued a "right to sue" letter in August of 2002.

Thereafter, in October of 2002, the District transferred Harper from Callaway High School to Hardy Middle School. Casher was not her principal at the time. The principal then was Dr. Cynthia Johnson. The District earlier had transferred Casher as a response to plaintiff's accusations, even though the District was not convinced of Casher's guilt. According to the District, Harper was transferred due to a reduction in force and because of the teachers in her field, Harper had the lowest number of students. After three months at Hardy Middle School, Harper was returned to Callaway when a new opening occurred. During the time of the transfer, Harper suffered no reduction of salary or benefits.

In November of 2002, Harper filed a complaint for relief in this court under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000–e, *et seq.* This court has federal-question jurisdiction granted by Title 28 U.S.C. § 1331.[6] Nei-

---

**4.** The parties did not provide this court with these tapes, so this court cannot state exactly what is on the tapes.

**5.** Title 42 U.S.C. §§ 2000e–5(a) provides in pertinent part: "The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful em- ployment practice as set forth in section 703 or 704 of this title [42 USCS §§ 2000e–2 or 2000e–3]."

**6.** Title 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

ther party disputes that this court has subject matter jurisdiction to hear this matter.

In her complaint, Harper contends that her transfer was retaliatory. She also claims as part of her harassment claim that she was denied the opportunity to "fill-in" as an administrator while teaching at Callaway High School; that she was denied promotion to assistant principal; that she was denied the opportunity to take a work-related trip; that she has had to seek medical treatment because of stress, having passed out on at least one occasion; that she is required to take medication prescribed for anxiety; and that she has had to engage the continual services of a psychologist.

For relief, Harper seeks in her complaint: (1) a permanent injunction; (2) restoration to her former position; (3) monetary damages for lost pay, attorney's fees, and emotional distress; and (4) for any other equitable relief supported by the facts.

The defendants answered plaintiff's complaint refuting the essential bases for all of her claims. Casher denies having sexually harassed plaintiff, testifying instead that he admired her classroom skills and even had recommended her for an assistant principal position.[7] The District contends that it had no knowledge of plaintiff's complaint of Casher's alleged misconduct and, thus, cannot be held accountable

even if plaintiff's version of the events is true. Further, says the District, Harper's reassignment was legitimately required, totally unconnected to her filing of an EEOC claim and thoroughly permitted by her contract of employment.

Before the court now are defendants' motions for summary judgment. The jurisprudence relative to these motions is set out below.

## II. *Summary Judgment Standard*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* Summary judgment is improper where the court merely believes

---

7. In his response to plaintiff's EEOC complaint, Casher submitted the following letter:

April 19, 2001
To Whom It May Concern:
I have read the EEOC Charge of Discrimination and the allegations contained therein which Ms. Jacqueline Harper filed on March 21, 2001. These charges are groundless and slanderous. I unequivocally deny them. I have never engaged in any improper, inappropriate, or harassing behaviors toward Ms. Harper.

I am shocked and amazed that Ms. Harper would make such false and defaming statements about me in light of the professional working relationship that we have had over the past six years. I am at a loss for an explanation as to why these allegations have been made.
An inquiry is welcomed in order to clear up any allegations made by Ms. Harper and to clear my name. If any further information is needed, please contact me.
Sincerely,
 Frederick D. Casher

it is unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). Facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505; *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988). The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir.1982).

## III. *Law and Application*

### A. *Prima Facie Case for Retaliation*

■ To prove retaliation under Title VII, Harper must prove that (1) she engaged in "protected activity," (2) her transfer amounts to an "adverse employment action," and (3) a "causal link" exists between the protected activity and the adverse employment action. *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir.2003). Should plaintiff in the face of a summary judgment motion fail to establish a *prima facie* showing of the above three elements, the defendant would be entitled to summary judgment. If a *prima facie* showing is made, the District, to be entitled to summary judgment, must then provide "some nondiscriminatory reason" for the adverse action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir.1992). Harper, to save her lawsuit, would then have to offer evidence that the defendant's reason is a pretext for discrimination. *Id.*

The defendants acknowledge that plaintiff has established a *prima facie* showing that she engaged in "protected activity." According to plaintiff, she was transferred from Callaway High School to Hardy Middle School after she had submitted an EEOC complaint against the District. This conduct would constitute "protected activity."

At issue are the second and third prongs, that is whether plaintiff has *prima facie* proof that she suffered an adverse employment action and whether a causal link exists between the protected activity and the adverse employment action. The District argues here that Harper has failed to make a *prima facie* showing on either of the two.

■ Harper contends that her mid-semester transfer from high school to middle school requiring emergency certifica-

tion amounts to an adverse employment action. Adverse employment actions, however, include only ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating. *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir.2002). Without additional evidence, "undesirable work assignments are not adverse employment actions." *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 555 (5th Cir.1997).

Harper's transfer is not comparable to a discharge, demotion, or withholding of compensation. First of all, in her contract of employment, Harper "agree[d] to reassignment during the school term to any area for which a valid certificate is held." The District obtained a temporary certification for Harper to teach a business education class called "Career Discovery" to middle school students. Although the transfer may have been undesirable to Harper, she remained a secondary educator with increased compensation. She suffered no loss of pay, benefits or other terms and conditions of employment in connection with her short transfer to Hardy Middle School. Instead, she received two raises, cumulatively totaling $3,929.00 between the time she filed her EEOC charge and her transfer to Hardy Middle School. Neither has plaintiff made any showing that teaching in middle school would be objectively less important or prestigious than teaching in high school. Accordingly, this court finds that plaintiff has failed to establish a prima facie case showing that her transfer amounted to an adverse employment action.

■ Neither has Harper presented enough proof to show that a causal link exists between the filing of her EEOC complaint and the transfer. "The mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case." *Roberson v. Alltel Information Services,* 373 F.3d 647, 655 (5th Cir.2004). "Action taken ... 20 months later suggests, by itself, no causality at all." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Eighteen and one-half months transpired between the EEOC filing and the transfer, which, absent other evidence showing causality, also suggests no link. Further, the District had reassigned Casher and the principal involved in plaintiff's transfer was someone else.

In response to plaintiff's retaliation claim, the District has submitted proof that its action was not retaliatory, but rooted in a District business decision.[8] In October 2002, the District's Deputy Superintendent informed Dr. Johnson, the prin-

---

8. In an October 16, 2002, letter to plaintiff, James N. Robertson, Director of Human Resources, sent plaintiff the following letter:

> To: Jacqueline Harper Callaway
> From: Jimmy Robertson
> Re: Administrative Reassignment
> Date: 16–Oct–02
> Due to reasons of student requests, certification action from the MDE, and vocational funding requirements, the district is reassigning you to the vacant tech prep position at Hardy Middle School. I apologize to you for the rushed manner in which this information was conveyed to you. The truth is that several factors used in making the decision did not become clear until the last minute. That, put with the fact that the district was delaying any move until the end of the first term, made this move seem especially sudden. I applaud the attitude you expressed in my office about the quality of your work wherever you are sent. I certainly sympathize with the concerns you have about being uprooted after the beginning of the year. And I thank you for your patience and adaptability in making the adjustments that are necessary to have this be a successful move for the students of the district.

Plaintiff has presented no evidence to show that the three reasons relied upon by the District to transfer plaintiff were false.

cipal at Callaway, that plaintiff would be reassigned to Hardy Middle School because plaintiff had less than 100 students in her business technology classes. Plaintiff does not dispute that compared to the other teachers in her field at Callaway, she had the fewest amount of students. Approximately three months after being at Hardy Middle School, plaintiff learned that a business teacher position would be available at Callaway to replace a teacher who was retiring for medical reasons. In January 2003, plaintiff returned to Callaway. A few months later in April 2003, she signed an employment contract with the District for the 2003–2004 school year which guaranteed her a $3,449.00 raise. Since 1996, plaintiff obtained a total of $12,945.00 in raises from the District, with $7,378.00 of those raises coming after she filed her EEOC charge. Further, plaintiff does not dispute that the District substantially aided her on becoming a National Board Certified Teacher by providing her with a mentor, letters of recommendation and reimbursement for part of the certification cost. Plaintiff reached this goal in November 2003, after having undertaken the quest in 2001.

Plaintiff's proof on a causal link between her transfer to middle school and her filing of her EEOC complaint is founded solely on the fact that it happened. She has presented no satisfactory proof of a nexus, other than the fact that the transfer occurred after the filing of the EEOC complaint. This simply is not enough to constitute a *prima facie* case on this factor. Therefore, this court finds that plaintiff has failed to establish a *prima facie* case on the third prong of the test for retaliation.

In sum, this court is not persuaded that plaintiff's proof satisfies the second and third prong of the juridical test for retaliation. Plaintiff has failed to make a prima facie case that she suffered an "adverse employment action," or that a causal link exists between the protected activity and her alleged adverse employment action.

## B. Harper's Sexual Harassment Claim

■ Sexual harassment that is so "severe or pervasive" as "to alter the conditions of [the victim's] employment and create an abusive working environment" violates Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). For purposes of summary judgment, Harper's allegations that Casher subjected her to sexual propositions, sexual innuendoes, and offensive physical contact are sufficient to create a genuine issue of material fact on whether she encountered sufficiently severe or pervasive sexual harassment. *See Young v. R.R. Morrison and Son, Inc.*, 159 F.Supp.2d 921, 925 (N.D.Miss.2000) (plaintiff's testimony that manager "constantly sexually harassed her during her two and one-half tenure" created jury issue on whether the harassment rose to the "severe or pervasive" level).

But simply showing a fact issue on whether Casher harassed her is insufficient, standing alone, to impose liability on the District. "Title VII does not make employers 'always automatically liable for sexual harassment by their supervisors.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 792, 118 S.Ct. 2275, 2285, 141 L.Ed.2d 662 (1998) (quoting *Meritor*, 477 U.S. at 72, 106 S.Ct. at 2408). In sexual harassment cases in which the alleged harasser was a supervisor of the allegedly victimized employee:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment

action is taken, a defending employer may raise an affirmative defense ... [which] comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher,* 524 U.S. at 807, 118 S.Ct. at 2292–93. In other words, the employer may be liable for the supervisor's harassment that culminates in a "tangible employment action, but if the harasser took no tangible employment action, the employer may avoid liability by establishing the affirmative defense." *Id.* In this case, the District is entitled to summary judgment because Casher never took a tangible employment action against Harper and she unreasonably failed to take advantage of the preventive and corrective measures adopted by the District to prevent sexual harassment. These matters are discussed below.

*C. Casher Never Took a "Tangible Employment Action" Against Harper*

In *Burlington Industries v. Ellerth,* the Supreme Court characterized "tangible employment actions" as those action taken by a harassing supervisor involving "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" that "in most cases inflict direct economic harm." 524 U.S. at 761–762, 118 S.Ct. 2257. It is undisputed that Casher inflicted no such significant adverse changes on Harper's employment; she remained employed by the District as a teacher, retained her employment benefits, and even accumulat-

ed several raises. *See Nichols v. B.L. Dev. Corp.,* 2000 WL 33907705, *1 (N.D.Miss. 2000) (plaintiff failed to show any tangible employment action, particularly because she "received numerous raises during her employment"); *May v. Autozone Stores, Inc.,* 179 F.Supp.2d 682, 686 (N.D.Miss. 2001) (employee suffered no tangible employment actions because she "was not fired" nor "passed over for a promotion, reassigned, or given any change in benefits" by the alleged harasser).

■ Harper alleges that at some unspecified time before 1999, Casher denied her the opportunity to "fill in" as a temporary assistant principal and, thus, that she "never got a chance to get any [administrative] experience." In *Zaffuto v. City of Hammond,* 308 F.3d 485 (5th Cir.2002), the Fifth Circuit rejected a nearly identical claim. In that case, the plaintiff police officer asserted that "he was denied the opportunity to be the acting shift lieutenant while his supervisor was on vacation." The Fifth Circuit held that this denial was "far too minor" to be an adverse employment action. *Id.* at 493. *See also Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C.Cir. 2003) ("denial of a lateral transfer, with no change in pay, benefits, or other material consequences" was not an adverse employment action).

Similarly, the alleged denial of "a chance to get ... [administrative] experience" by temporarily "filling in" as assistant principal (a position outside Harper's regular job duties) was not a tangible employment action. *See Slay v. Glickman,* 137 F.Supp.2d 743 749 (S.D.Miss.2001) ("denial of training in an area peripheral to the claimant's main duties would not tend to result in a change of employment status, benefits or responsibilities [and thus] denial of such training is not an adverse employment action covered by Title VII") (citing *Shackelford v. Deloitte & Touche,*

*LLP,* 190 F.3d 398, 406 (5th Cir.1999) ("an employer's refusal to allow a certain employee to attend training sessions [does] not effect a material adverse change in the terms or conditions of the plaintiff's employment")).

 And, Harper was not subjected to a "tangible employment action by Casher when the District denied her promotion to assistant principal. It is undisputed that Casher actually recommended her for that promotion, but the District chose not to follow his recommendation and denied the promotion without knowing about the alleged harassment." *See Casiano v. AT&T Corp.,* 213 F.3d 278, 284–85 (5th Cir.2000) (employee did not suffer a tangible employment action caused by alleged harasser when he was denied access to a training program because it was another manager, not the harassing supervisor, who gave him a "satisfactory" evaluation, which was too low to enter program); *Hammonds v. Fitzgerald's Mississippi, Inc.,* 1999 WL 33537168, *3 (N.D.Miss.1999) (employee's discharge was not a tangible employment action, because employer's new Director of MIS, not the alleged harasser, decided to eliminate plaintiff's junior programmer position, while alleged harasser actually delayed implementation of that decision for six months).

 Although she did not allege it in her complaint, Harper may also assert that Casher's denial of her request to take a work-related trip to Atlanta was a tangible employment action. If so, she would be wrong as a matter of law. *See Murray v. Chicago Transit Authority,* 252 F.3d 880, 888 (7th Cir.2001) ("refusal to approve [employee's] travel plan to the October APTA conference" was not a tangible employment action because it was "isolated, and relatively minor" and "did not significantly affect her job responsibilities or benefits"); *Markel v. Bd. of Regents of*

*Univ. of Wis. Sys.,* 276 F.3d 906, 911 (7th Cir.2002) (denial of the "ability to travel and make presentations ... [does] not amount to actionable adverse employment action"); *Delatorre v. Minner,* 238 F.Supp.2d 1280, 1289 (D.Kan.2002) ("selection of [other employees and not plaintiff] to attend the annual national convention" was not a tangible employment action); *Duran v. New Mexico Dept. of Labor,* 143 F.Supp.2d 1278, 1285 (D.N.M.2001) (refusal of permission to attend conference was not a materially adverse employment action), *aff'd,* 26 Fed.Appx. 880, 2002 WL 120527 (10th Cir.2002).

Because Casher never subjected Harper to any tangible employment action, the District is not automatically liable for his alleged harassment and may present the *Faragher/Ellerth* affirmative defense.

### D. The Faragher/Ellerth Affirmative Defense

#### 1. Whether the District Exercised Reasonable Care to Prevent and Promptly Correct Any Sexually Harassing Behavior

 The District adopted sexual harassment policies in 1986 under Title VII and Title IX of the Civil Rights Act of 1964. The District trained Fred Casher on its policies when he became an assistant principal and periodically sent him updates. The District promptly investigated an anonymous sexual harassment allegation against Casher made during his tenure at Callaway High School, but could not corroborate the allegations.

Harper signed annual employment contracts with the District that explicitly made her employment subject to the policies and informed her that the policies were available at the District Superintendent's office. The policies were also available in the principal's office and the library. The sexual harassment policies

provided that an employee may bypass a harassing supervisor and complain about sexual harassment to the District's Title IX coordinator. Harper was aware of the sexual harassment policies and conceded that her mistaken beliefs about the complaint process arose because she did not pay much attention to them before January 2001. She also knew that she could obtain harassment complaint forms from the District Superintendent's office, but did not bother to get the forms before February 2001.

When Harper finally informed Assistant Superintendent Delores Hopkins about the alleged harassment by Casher, Dr. Hopkins advised Harper that she did not have to report to Casher and could even bypass submitting the forms by sending Dr. Hopkins a written narrative detailing her complaint. But Harper failed to do so, and instead chose to file an EEOC charge. Once the District received the EEOC charge, District Counsel JoAnne Shepherd immediately sought to interview Harper (who failed or refused to cooperate) and requested that Casher respond to Harper's allegations, which he categorically denied. Even thought the District concluded that Harper's allegations were unsupported, the District nevertheless reassigned Casher to another school before the next school year began and assigned a new principal to Callaway where Harper remained as a teacher.

These undisputed facts demonstrate that the District's sexual harassment policies and response to Harper's complaint were "both reasonable and vigorous." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir.1999) (school district's anti-discrimination policy, swift response to harassment complaints, and acceptance of harasser's resignation was sufficient to establish first prong of affirmative defense); *see also Casiano v. AT&T Corp.*, 213 F.3d 278, 286–87 (5th Cir.2000) (employee's ad-

mitted knowledge of employer's policy prohibiting sexual harassment and complaint procedure and employer's prompt investigation of complaint showed that employer "exercised reasonable care to prevent and, if not prevented, to correct promptly any sexually harassing behavior by supervisory personnel").

> *2. Whether Harper Unreasonably Failed to Take Advantage of the District's Preventive or Corrective Opportunities*

In *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 265 (5th Cir.1999), the Fifth Circuit explained the compelling policy reasons underlying the Supreme Court's pronouncement in *Faragher* and *Ellerth* that employees must act reasonably and promptly when confronted by a supervisor's harassing behavior:

> [W]hen [an employee] promptly complains about a supervisor's inappropriate sexual actions, she can thwart the creation of a hostile work environment. to the extent redress is sought, is justified, and is adequately provided by the company, the complained-of incidents will not likely have become severe or pervasive enough to create an actionable Title VII claim. This result effectuates the purpose of Title VII, which cannot guarantee civility in the American workplace but, at its best, inspires prophylactic measures to deter unwanted sexual harassment. By promptly invoking a company's grievance procedure, [an employee] has received the benefit Title VII was meant to confer. In such cases, an actionable hostile environment claim will rarely if ever have matured.

The second prong of the *Faragher/Ellerth* defense implements a "policy imported from the general theory of damages that a victim has a duty 'to use such means as are reasonable under the circumstances to

avoid or minimize the damages' that result from violations of the statute." *Faragher,* 524 U.S. at 806, 118 S.Ct. 2275, 141 L.Ed.2d 662 (emphasis added) (quoting *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231 n. 15, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)). "And while proof that an employee failed to fulfill the ... obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.* at 807–08, 118 S.Ct. 2275, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.

■ In this case, accepting Harper's testimony as true for purposes of summary judgment, her own admitted failure to promptly invoke the District's complaint process allowed Casher to continue the harassment over the years. Even though Harper knew that his alleged conduct violated the District's sexual harassment policy and knew or should have known that she could complain to the District to have his conduct stopped, she failed to do so for over six years. Then, once she finally decided to complain, she failed or refused to cooperate with the District's investigation. She never provided the written narrative requested by the Assistant Superintendent, and she failed or refused to be interviewed by the District Counsel.

These undisputed facts show that Harper unreasonably failed to take advantage of the preventive and corrective measures made available by the District. *Casiano,* 213 F.3d at 287 (employee "unreasonably failed to take advantage of any preventative or corrective opportunities" because, even though "he suffered at least fifteen propositions [over a four month period, he] never reported any of the incidents until months after the last of them"); *Scrivner,* 169 F.3d at 971 (employee "failed to rea-

sonably avail herself of [the school district's] preventative and corrective sexual harassment policies" because "[f]rom the summer of 1995 to March 1996[she] never complained about [her principal's] increasingly offensive behavior").

Harper seeks to explain her admitted failure to promptly complain and failure or refusal to cooperate by raising her subjective fear of reprisal and subjective belief that complaining would be futile. These "reasons" are insufficient as a matter of law to show that her failure to complain and cooperate were reasonable. In *Young v. R.R. Morrison and Son, Inc.,* 159 F.Supp.2d 921 (N.D.Miss.2000), the court explained why Harper's subjective fears of reprisal are wholly insufficient to defeat the District's affirmative defense:

All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, *the reasons for not complaining about harassment should be substantiated and based upon objective evidence that some significant retaliation will take place.* For example, a plaintiff may bring forward evidence of prior unresponsive action by the company or management to actual complaints. *Here, there was no evidence that Morrison had ever taken any adverse tangible employment action against complaining employees* as that term is defined by the Supreme Court. The court is of the opinion that Young's fears of retaliation were *subjective and generalized* rather than objective and specific and her failure to utilize Morrison's complaint procedure *cannot be held to be reasonable* in light of the purposes of the *Ellerth/Faragher* affirmative defense. (emphasis added)

*Id.* at 926–27 (citations and some quotation marks omitted). *Accord Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 267 (4th Cir.2001) ("A generalized fear of

retaliation does not excuse a failure to report sexual harassment. Instead, the law is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit."); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir.1999) ("[A]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment.").

Similarly, Harper's alleged subjective belief that complaining about Casher would be futile because the District would believe him and not her is likewise insufficient. *See Taylor v. Nickels and Dimes, Inc.,* 2002 WL 1827657, *6 (N.D.Tex.), *aff'd* 71 Fed.Appx. 440, 2003 WL 21417470 (5th Cir.2003) (employee's explanation "that she did not report any of the threats because 'they wouldn't have done nothing [sic] but cover [up for the harasser]' ... is insufficient to justify Plaintiff's failure to report this conduct."); *Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 268 (4th Cir.2001) ("An employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer.").

This court concludes, therefore, that the District is entitled to the protective cloak of the *Faragher/Ellerth* affirmative defense.

### E. Casher's Liability in his "Official" and "Individual" Capacities

 Harper's complaint names both the District and Casher as defendants. Harper named Casher a defendant in his "official" capacity as an agent of the District. Harper "is not entitled to maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the corporation could be held liable twice for the same act." *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir.1999). Plaintiff's claim against the District, thereby, precludes the claim against Casher in his official capacity.

 Harper also named Casher a defendant in his "individual" capacity. Harper's complaint makes no mention of any state law claims; Harper is suing Casher in his individual capacity under Title VII only. In Title VII cases, it is "settled Fifth Circuit law ... that employees may not be sued for damages in their individual capacities." *Id.* "Congress' purpose in extending the definition of an employer to encompass an agent was simply to incorporate *respondeat superior* liability into Title VII." *Id.* The District's liability for its agent precludes the imposition of liability on Casher as an individual. The Title VII claim against Casher in his "individual" capacity cannot survive summary judgment.

### IV. Conclusion

Plaintiff has failed to establish a *prima facie* case that (1) she was the victim of "adverse action" and (2) that causality exists between the protected action and her alleged "adverse action." Because of this failure of proof, the District is entitled to summary judgment on the issue of retaliation. Further, the District is entitled to summary judgment on plaintiff's claim of sexual harassment. Casher never targeted plaintiff for any tangible adverse employment action and the District is entitled to the protection of the Faragher/Ellerth Defense.

Casher also is entitled to summary judgment. Title VII does not permit lawsuits against persons in their individual capacity. Casher was not sued under any Mississippi state law claims.

All other pending motions are hereby terminated as moot. This court will issue a separate judgment in favor of defendants pursuant to the Uniform Local Rules and Rule 58 of Federal Rules of Civil Procedure.